THEDIN ET AL., APPELLANTS, *v.* FIRST NATIONAL BANK OF SAVAGE, RESPONDENT.

(No. 5,118.)

(Submitted April 4, 1923. Decided April 14, 1923.)

[214 Pac. 956.]

*Agriculture—Seed Liens—Corporation Claimant—Verification by Officer—Sufficiency.*

Seed Liens—Verification—Common-sense Construction.
    1.   An affidavit attached to a lien claim, when attacked as insufficient should not be given a technical but a common-sense interpretation, more regard being had to substance than form.
Same—Corporation Claimant—Verification—Sufficiency.
    2.   *Held*, in view of section 8359, Revised Codes of 1921, providing that a corporation may perfect a seed lien, the statute, however, not specifying the manner in which the statement of lien shall be verified nor by whom in the event the claimant is a corporation, and in view of the fact that a corporation can only act through its officers, that an affidavit attached to such a lien claim signed "First National Bank of Savage" by its president and cashier was sufficient.
Corporations—Affidavit by Officer an Act of Corporation.
    3.   Where a proper officer of a corporation makes an affidavit for and in its behalf, his act is that of the corporation, since the corporation acts *per se* and not *per alium.*

Same.

4. A corporation, as such, cannot itself make an affidavit but must do so through a proper officer, and where such an officer in making oath to the truth of its contents sets forth the fact that he does so for and in behalf of his principal and the affidavit should prove to be false, he, and not the corporation, is liable to prosecution for perjury.

*Appeal from District Court, Richland County; Stanley E. Felt, Judge.*

ACTION by John Thedin and another against the First National Bank of Savage. Judgment for defendant, and plaintiffs appeal. Affirmed.

*Messrs. Hurley & O'Neill,* for Appellants, submitted a brief; *Mr. C. C. Hurley* argued the cause orally.

The right to acquire a seed lien is purely a statutory right and can only be acquired by strictly doing all things prescribed by the statute as necessary to acquire the same. (*Crane & Ordway Co.* v. *Baatz,* 53 Mont. 438, 164 Pac. 533.)

From a careful reading of section 8360, Revised Codes of 1921, it is apparent that it was the intention of the legislature that this statement should be made, verified and filed by the party entitled to the same. If this section should be construed broad enough to include a statement made, verified or filed by an officer, agent or attorney of another party, a statement so made ought to show the authority or the capacity in which the third party makes the affidavit and in whose behalf it is made. The purpose in requiring the filing of such a statement no doubt was to give public notice of the identity of the person claiming a lien, of the amount claimed, the name of the party whose property was charged and a description of the property to be charged with the lien. By no course of reasoning can it be said that the legislature intended to leave any of these elements open to conjecture or speculation or leave them to be established by independent evidence. (See 2 C. J. 323, 325, 327, 353, 357; *Blythe & Fargo Co.* v. *Swenson,* 7 Wyo. 303, 51 Pac. 873.)

*Messrs. Hildebrand & Warren,* for Respondent, submitted a brief; *Mr. Raymond Hildebrand* argued the cause orally.

It is a general principle of law that liens, whether by contract or operation of law, are of too sacred a character to be divested or impaired by vague or uncertain implication. Both policy and morality require that they should be sustained whenever it may be done without violation of positive law. (17 R. C. L. 698; *Kimball* v. *Jenkins,* 11 Fla. 111, 89 Am. Dec. 237.)

A corporation may and does act through its agents and in some instances acts for itself through the officers who have been clothed by statute or otherwise with the authority to exercise the powers of the corporation. When a corporation acts through an agent, the person clothed with the authority of agency is individually doing an act for and on behalf of the corporation, whereas, when a corporation acts through those officers who are clothed with the authority to act for the corporation, the corporation, is, in fact, acting for itself and in the only manner possible for it to act. Hence, when a corporation in doing a corporate act, does not go outside of its corporate machinery and capacity it is a confusion of terms and of ideas to say that it is acting through an agent when the fact is that it is acting through an agency in chief. (*New Brunswick S. B. & Canal Co.* v. *Baldwin,* 14 N. J. L. 440; *Trenton Bkg. Co.* v. *Haverstick,* 11 N. J. L. 171; *Bank of Toronto* v. *McDougall,* 15 C. C. P. 475, 482.)

It was held in the case of *Hopper* v. *Lovejoy,* 47 N. J. Eq. 573, 12 L. R. A. 588, 21 Atl. 298, that in the eye of the law an acknowledgment annexed to a chattel mortgage made by an officer of the grantor was the acknowledgment of the grantor itself as distinguished from the act of an agent or attorney. (See, also, *Shaft* v. *Phoenix Mutual Life Ins. Co.,* 67 N. Y. 544, 23 Am. Rep. 138; *Sumner* v. *Dalton,* 58 N. H. 295; *Yost* v. *Commercial Bank,* 94 Cal. 494, 29 Pac. 858; *Alferitz* v. *Scott,* 130 Cal. 474, 62 Pac. 735; *Commercial Nat. Bank* v. *Hutchinson,* 87 N. C. 22; *Smith* v. *Smith,* 62

Ill. 493; *Sawyer* v. *Cox,* 63 Ill. 130.) And it has been held that the verification of pleadings by an officer of the corporation is, in fact, the verification of the corporation itself. (*Commercial Nat. Bk.* v. *Hutchinson,* 87 N. C. 22; *American Insulator Co.* v. *Bankers & Merchants Tel. Co.,* 13 Daly (N. Y.) 200; *Henry* v. *Brooklyn Heights R. Co.,* 43 Misc. Rep. 589, 89 N. Y. Supp. 525.)

The courts quite generally agree that where the statute does not make any requirements for the form of the authentication of an affidavit, testimony *aliunde* may be given intending to show that the oath was in fact administered. (*Turner* v. *St. John,* 8 N. D. 245, 78 N. W. 340; *Cox* v. *Stern,* 170 Ill. 442, 62 Am. St. Rep. 385, 48 N. E. 906; *James* v. *Logan,* 82 Kan. 285, 108 Pac. 81; *Sebesta* v. *Supreme Court,* 77 Neb. 249, 109 N. W. 166.)

MR. JUSTICE GALEN delivered the opinion of the court.

This action was instituted by the plaintiffs against the defendant to recover damages for the unlawful conversion of certain wheat, alleged to have been taken from the possession of one Nic Zeimit, being then covered by a chattel mortgage executed by Zeimit to the plaintiffs, filed for record October 17, 1919, as security for the payment of a promissory note for $2,520, and of which wheat plaintiffs alleged the right of possession. The defendant, by answer, denied generally the allegations of plaintiffs' complaint, and pleaded affirmatively a seed lien on the wheat in its favor, filed for record November 13, 1919, to the amount of $904.20, which was fully paid by Zeimit after harvest in 1920. Conversion of the wheat was denied. Issue being joined upon a reply filed by the plaintiffs, the cause was tried to the court without a jury, at the conclusion of which the court made certain findings of fact and conclusions of law, upon which judgment was duly made and entered.

The court found that the seed lien of the defendant was duly verified under oath and filed within the time required

by the statute, and was superior to the lien of the plaintiffs to the extent of $904.20 and interest at the rate of eight per cent per annum. Counsel for plaintiffs conceded the priority of defendant's lien on the wheat, provided the affidavit of lien made by the defendant bank is sufficient. The appeal is from the judgment. Errors assigned are directed to the conclusions of law made by the court, raising but a single question determinative of the appeal, *viz.:* Did the defendant have a valid and subsisting lien superior to plaintiffs' rights?

A seed lien, as to the crop covered thereby, has priority over all other liens and encumbrances. (Sec. 8361, Rev. Codes 1921.) The Act provides: "Any person, company, association, or corporation, who shall furnish to another seed to be sown or planted, or funds or means with which to purchase such seed to be sown or planted, or to be used in the production or cultivation of a crop or crops on lands owned or contracted to be purchased, used, leased, occupied, or rented by him, or held under government entry, shall, upon filing the statement provided for in the next section, have a lien not exceeding the purchase price of seven hundred bushels upon the crop produced from the seed or grain so furnished, or any part thereof, and, upon the seed or grain threshed from such crop, to secure the payment of the amount or the value of the seed or grain so furnished, or the funds or means advanced to purchase the same." (*Id.*, sec. 8359.)

The next section prescribes the form and contents of the statement authorized to be filed. It reads: "Any person who is entitled to a lien under this Act shall, within thirty days after the seed or grain is furnished, or the funds, means, or moneys advanced therefor, file in the office of the county clerk and recorder of the county in which such seed or grain is to be planted or used, a statement in writing, verified under oath, showing the kind and quality of the seed or grain furnished, its value, or the amount of the funds or money advanced to pay therefor, the name of the person or persons to whom furnished, and a description of the land and of each tract of

land upon which the same is to be or has been planted, or sown, or used in the production of a crop or crops. Unless the person entitled to such lien shall file such statement within the time aforesaid, he shall be deemed to have waived the right thereto.'' (*Id.*, sec. 8360.)

The seed lien declaration upon which defendant predicates its rights reads as follows:

"*Seed Lien.* State of Montana, County of Richland—ss.: The First National Bank of Savage, a National Banking Corporation, by W. B. Gibbs, vice president, and S. L. Hood, cashier, being duly sworn, say that on the 12th day of November, A. D. 1919, they furnished to Nic Zeimit three hundred thirty bushels of seed wheat, of the value of $904.20, to be sown (planted) in the season of 1920 upon the following described land situated in the county of Richland and state of Montana, owned (used) (occupied) (rented) by said Nic Zeimit, to wit: On section twenty-seven (27) in township twenty (20) north, of range fifty-seven (57) E. M. P. M. The value of the seed so furnished is nine hundred four and 20/100 dollars, and that there is due on account of said seed furnished as aforesaid the sum of nine hundred four and 20/100 dollars, for which a lien is claimed by affiant upon the crop grown upon the premises hereinbefore described. The First National Bank of Savage, by W. B. Gibbs, Vice Pres. S. L. Hood, Cashier. [Corporate Seal.]

"Subscribed and sworn to before me this 12th day of November, A. D. 1919. H. G. Snell, Notary Public for the State of Montana, Residing at Savage, Montana. My commission expires Sept. 25th, 1922. [Notarial Seal.]''

Tested by the requirements of the statute, is defendant's [1-4] seed lien sufficient? We think it is. Plaintiff's counsel contend that the affidavit of lien made by the defendant bank is fatally defective, in that it purports to have been made by the defendant corporation, rather than by any person in its behalf. In support of this contention it is argued that there is no language employed in the affidavit or the cer-

tificate of the officer before whom it was made from which it may be inferred that it was sworn to by any person; that unless such an affidavit is definite and certain as to the identity of the affiant it is fatally defective, and that the right to a seed lien, being purely statutory, may be acquired only by a strict observance of the statutory requirements; and it is urged that: "The purposes of requiring the statement to be verified under oath are, first, to entitle the lien claim to be made a matter of public record; and, second, to require the statements therein contained to be verified under such an oath as will render the affiant subject to prosecution for perjury, if it be false in material particulars." Plausible argument is made and authority cited in support of plaintiffs' contention; but in our opinion the strict rule advocated is altogether too technical.

An affidavit is a written declaration under oath (*Id.*, sec. 10632), and under the Seed Lien Act any person or corporation may perfect a lien on the crop grown by filing in the office of the county clerk and recorder "a statement in writing verified under oath." After defining the word "affidavit," Webster says: "It must sufficiently identify the person who makes it." (New International Dictionary, p. 38.)

The statute does not specify the manner in which the statement of lien shall be verified nor by whom, in the event the claimant is a corporation. It differs in this respect from the requirement for verification of a pleading by a corporation. (*Id.*, sec. 9163.) The legislature having failed to require more than "a statement in writing verified under oath," a common-sense interpretation of the language used should be adopted. It is absurd to say the corporation was sworn or made oath, it being a matter of general knowledge that it is a creature of the law which only may act through its officers, or authorized agents. The form used is far from being a model, yet its recitals in the body of the signatures leave no room for debate by whom it was in fact made. Any reasonable person, upon reading the affidavit, would quite

naturally understand that it was made by Gibbs, as vice-president, and Hood, as cashier, of the corporation, for and on its behalf. Of necessity they made the oath required, as the corporation, a legal entity, could not do so.

In the case of *Ullman Co.* v. *Adler,* 59 Mont. 232, 196 Pac. 157, Mr. Justice Holloway, speaking for this court, well said: "A corporation is a legal entity, and can act only through its officers or other qualified agents; but whenever a proper officer makes an affidavit for and in the name of the corporation, he does not act as its agent; he exercises the corporate powers of the entity in the only way in which they can be exercised and the affidavit is the corporate act. The corporation acts *per se* and not *per alium.* Upon this subject the authorities are well-nigh unanimous. (*Lewiston Co-operative Society* v. *Thorpe,* 91 Me. 64, 39 Atl. 283; *American Insulator Co.* v. *Bankers' Tel. Co.,* 13 Daly (N. Y.), 200; *Bank of Toronto* v. *McDougal,* 15 V. C. C. P. 475; *American Soda Fountain Co.* v. *Stolzenbach,* 75 N. J. L. 721, 127 Am. St. Rep. 822, 16 L. R. A. (n. s.) 703, and note, 68 Atl. 1078; *Scott Stamp & Coin Co.* v. *Leake,* 9 Cal. App. 511, 99 Pac. 731; 2 C. J. 325.)"

If the affidavit be false in material particulars, only the persons named as officers of the corporation and who made the oath could be prosecuted for perjury. No one would seriously consider holding the corporation criminally responsible. "A corporation cannot make an affidavit. But where an affidavit, made by its president on its behalf, clearly states that he is its president, and purports on its face to be a proper affidavit by him on behalf of the corporation, the mere circumstance that he signed the affidavit in the name of the corporation, by himself, as president, is immaterial, and causes no ambiguity and does not affect the sufficiency of the affidavit on behalf of the corporation. Such an affidavit is good, and meets the test that it must be so clear and certain that an indictment for perjury may be sustained upon it if false." (1 Cal. Jur., p. 664.)

The better rule is to disregard objections made to the form rather than the substance of such an affidavit. It is well stated by Judge Hawley, United States District Judge for the District of Nevada, in *Silver Peak Mines* v. *Hanchett,* (C. C.), 80 Fed. 990. In that case an affidavit for attachment was headed: "Silver Peak Mines, a corporation, the plaintiff above named, by M. A. Murphy, its attorney, being duly sworn, says," etc. The following convincing statement of the proper interpretation of such affidavit was made by the learned judge in passing upon its sufficiency: "I think the form of the heading of the affidavit is subject to criticism. * * * But the point that is raised is purely technical in its character, and it goes simply to the form, and not the substance, of the affidavit. The true interpretation to be given to that affidavit is that it is the affidavit of M. A. Murphy, who is the attorney for the corporation. It is not susceptible, in my judgment, of any other judicial interpretation." (See, also, *Coghlan* v. *Quartararo,* 15 Cal. App. 662, 115 Pac. 664.)

In the case of *Hotaling Co.* v. *Brogan,* 12 Cal. App. 500, 107 Pac. 711, which involved the sufficiency of an affidavit for attachment, it was held that a verification signed by Mr. Hotaling, president of the company, in the following manner, to-wit, "A. P. Hotaling & Co., by R. M. Hotaling, President," was sufficient, and the court in this case said: "In judging of its sufficiency in the particular called in question, we must refer to the entire affidavit. It plainly appears that R. M. Hotaling was, when he made the affidavit, the president of the corporation, and that he made it 'in its behalf.' That he was the person sworn and the person who made the affidavit, and deposed to the facts embodied in it, clearly appears from the body of the document, which the notary certified was subscribed and sworn to. * * * The corporation could not make the affidavit, and the fact that its name is attached to it is of no importance, and involves no ambiguity upon the question as to who in fact made it. That the affiant affixed the corporate name, followed as it is, 'By R. M. Hotaling,

President,' does not change the fact, clearly appearing, that he (Hotaling) personally made the affidavit and * * * swore to it.''

The opinion of the supreme court of Wyoming in *Blyth & Fargo Co.* v. *Swensen,* 7 Wyo. 303, 51 Pac. 873, upon which plaintiffs rely principally, was rendered upon a somewhat different state of facts than in the case before us. There the sufficiency of an affidavit for attachment was under consideration, which recited that the plaintiff in the action being duly sworn, etc., subscribed and sworn to by ''the Blyth & Fargo Co., by Sherman Fargo, managing agent.'' It is distinguishable from the instant case, in that there was no mention made in the body of the affidavit of the name of any officer acting in behalf of the corporation. By its recitals, the affidavit purported to be that of the plaintiff corporation. The views therein expressed go further than we are disposed to accept, and it is noteworthy that the supreme court of California refused to follow it in the *Hotaling Co. Case.*

The conclusions reached by the trial court are manifestly correct. Accordingly, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK, concur.